# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ADAM WESTPHAL,<br><br>    Defendant. | 3:18-CR-30099-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS EVIDENCE |

Officers searched Adam Westphal's real and personal property and obtained a urine specimen from him under the authority of two judge-issued warrants. After being indicted on drug and firearm charges, Westphal moved to suppress all evidence seized and derived from the searches on Fourth Amendment grounds. Because federal law does not require the exclusion of this evidence, the Court recommends that the suppression motion be denied.

## BACKGROUND

On December 19, 2017, Deputy Justin Tvedt contacted Michael Varilek, a fellow deputy in the Corson County Sheriff's Office, about drug intel Deputy Tvedt received on Westphal. Deputy Tvedt informed Deputy Varilek that Nicole Forgey, Westphal's ex-wife and the mother of his children, had called and said she thought Westphal was possibly using drugs, particularly methamphetamine and marijuana. According to

Deputy Tvedt, Forgey feared for her children's safety because they had reported seeing jars with a green substance in Westphal's residence along with various pieces of drug paraphernalia.  Forgey disclosed how Westphal was paranoid that law enforcement was watching him, citing as evidence of this, his installation of security cameras around the house and him sleeping with a pistol.  Forgey also let Deputy Tvedt know that Westphal was seeing a woman from Mobridge named Skylar, who Deputy Varilek believed was Skylar Sartorius, a known methamphetamine user.  Based on the information he had received, Deputy Varilek – a certified drug recognition expert and interdictor – suspected Westphal was using methamphetamine and marijuana.

The following day, Deputy Varilek relayed what he had learned and his suspicions to Curtis Hamburger, the Potter County Sheriff.  The sheriff affirmed that he was aware of the situation and had heard Westphal may be using drugs.  Sheriff Hamburger also mentioned that Westphal's sister, Amy Cooper, had called to apprise the sheriff that she and other family members were going to Westphal's home to do an intervention because they were concerned about Westphal's drug use.  The sheriff asked for Deputy Varilek's assistance in Gettysburg, where Westphal lived.

That same afternoon, Deputy Varilek and Sheriff Hamburger met with and talked to Cooper.  She was visibly upset and related that she and family members had traveled to Gettysburg in an attempt to help Westphal.  Cooper told both officers that she had been to Westphal's house and spoken to him.  She characterized Westphal's behavior as argumentative and combative and felt he was hallucinating.  Cooper

spelled out how she went over to a neighbor's shed to check on a person Westphal said was watching him but could not find anyone. She verified that Westphal was monitoring his property with security cameras that would send notifications to four of his cell phones. She pointed out too that he had no history of any mental illnesses and was acting "very odd." And she noted that since she last saw Westphal six months earlier, he had lost a lot of weight and his cheeks had sunk in.

Cooper believed Westphal was using methamphetamine. She informed the two officers that while she was at Westphal's house, he retrieved an unknown object from his bedroom which he then carried to and hid somewhere in the garage. Additionally, she showed the officers a photograph Westphal's 10-year-old daughter took of a marijuana pipe and cigarette lighter the child found in one of Westphal's house cabinets.

Later in the day, Deputy Varilek requested a state judge to issue a search warrant for Westphal's residence, garages, and vehicles, and for a blood or urine specimen. The judge granted the request and Deputy Varilek, Sheriff Hamburger and other officers went to Westphal's home to execute the warrant. Westphal, Jamie Holzwarth – a known methamphetamine user – and others were present when officers arrived.

Searching officers seized a wooden dugout,[1] small plastic baggies, a safe with cleaning rods, snort tubes, paper with residue on it, five cell phones, a laptop computer,

---

[1]A small container with chambers to hold or carry marijuana, a pipe (or bat),
(continued. . .)

3

and several firearms. Officers also obtained urine samples from Westphal and Holzwarth both of which tested presumptively positive hours later for banned drugs.

A day afterward, Sheriff Hamburger applied for a warrant to search the five phones and laptop he had in his custody. The same state judge issued a search warrant for these electronic devices. Officers were only able to retrieve data from two of the phones (which the Government says has so far yielded no relevant or useful information in its case against Westphal).

Ultimately, a federal grand jury indicted Westphal, charging him with conspiracy to distribute a controlled substance, possession with intent to distribute a controlled substance, possession of a firearm by a prohibited person, and possession of an unregistered firearm and destructive device (seven offenses), and seeking to forfeit certain named firearms and property from him. He seeks now to suppress from use at trial all evidence seized and gleaned from the two warrant searches. At a hearing held to address Westphal's motion, the Court heard testimony from two witnesses (Deputy Varilek and Sheriff Hamburger) and received 12 exhibits into evidence.

---

and/or a lighter. *See* http://www.urbandictionary.com.php?term=dugout (last visited March 13, 2019).

## DISCUSSION

### A. Deficiencies

Westphal claims that the search warrants were issued in violation of the Fourth Amendment.  He argues that the warrants – and by extension the resulting searches and seizures based on them – were defective because probable cause was lacking.  The affidavits in support of both warrants, he says, were based on hearsay statements from informants who provided tainted and uncorroborated information.

In light of the probable cause and informant reliability issues that exist, ascertaining – definitively – whether the search warrants comported with Fourth Amendment strictures is no easy task.  The Court though need not engage in this complicated exercise because there is a simpler, more clear cut, way to resolve the overarching constitutional question:   the "good-faith" exception to the warrant requirement.[2]

### B. *Leon* and Good-Faith Exception

In *United States v. Leon,*[3] the Supreme Court created an exception to the Fourth Amendment Exclusionary Rule.[4]  Under this exception, the Rule is not to "be applied to exclude the use of evidence obtained by [ ] officers acting in reasonable reliance on a

---

[2]*See United States v. Patten*, 664 F.3d 247, 250-51 (8th Cir. 2011), *cert. denied*, 566 U.S. 969 (2012); *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).

[3]468 U.S. 897 (1984).

[4]*See id*. at 922.

5

detached and neutral [ ] judge's determination of probable cause and the issuance of a search warrant that is ultimately found to be invalid."[5]  The rationale behind the exception is straightforward.  It is the issuing judge's responsibility to determine whether probable cause exists and, if so, to issue a warrant that comports with the dictates of the Fourth Amendment.  Ordinarily, an officer cannot be expected to question or second guess the judge's probable-cause determination or the technical sufficiency of the warrant itself.  "[O]nce the warrant issues, there is literally nothing more that [an officer] can do in seeking to comply with the law."[6]  Penalizing the officer for the judge's errors, rather than the officer's own, does not deter Fourth Amendment violations.[7]

The *Leon* exception does not exclude evidence when an officer's reliance on a judge-issued warrant is objectively reasonable.[8]  Even so, there are four circumstances in which the exception does not apply:  (1) when the issuing judge is misled by

---

[5]*United States v. Taylor*, 119 F.3d 625, 629 (8th Cir.) (*citing Leon*, 468 U.S. at 905), *cert. denied*, 522 U.S. 962 (1997).

[6]*Leon*, 468 U.S. at 921.

[7]*See id.*

[8]*See id.* at 922-23; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984) (Exclusionary Rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a neutral and detached judge that is subsequently determined to be invalid); *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012) ("Under *Leon* . . ., disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant.").

information in an affidavit that the affiant knows is false or is made with reckless disregard for the truth; (2) when the issuing judge wholly abandons his judicial role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in the warrant's existence is entirely unreasonable; and (4) when the warrant is so facially deficient (because, for example, it failed to particularize the place to be searched or the thing to be seized) that the executing officer cannot reasonably presume it to be valid.[9]

The first, second and fourth disqualifying condition precedents can be disposed of here in short order. The third one, however, requires some discussion.

Deputy Varilek and Sheriff Hamburger's search warrant affidavits contain no knowing, intentional, or reckless omissions or false statements.[10] Westphal does not claim otherwise or assert that any of the information the officers supplied to the state judge was misleading or skewed the probable cause showing made in their affidavits.[11]

What's more, there is no evidence that the state judge failed to act in a neutral and detached manner or that he was a mere "rubber stamp" or an "adjunct law enforcement officer."[12] Nor is there evidence to suggest that the judge was somehow

---

[9]*Leon*, 468 U.S. at 923; *United States v. Fiorito*, 640 F.3d 338, 344-46 (8th Cir. 2011), *cert. denied*, 565 U.S. 1246 (2012).

[10]*See United States v. Cannon*, 703 F.3d. 407, 414-15 (8th Cir.), *cert. denied*, 569 U.S. 987 (2013); *United States v. Chambers*, 987 F.2d 1331, 1334 (8th Cir. 1993); *United States v. Long*, 30 F.Supp.3d 835, 856 (D.S.D. 2014), *aff'd*, 797 F.3d 558 (8th Cir. 2015).

[11]*See Cannon*, 703 F.3d at 414-15.

[12]*See Long*, 797 F.3d at 566-67; *United States v. Farlee*, 757 F.3d 810, 819-20 (8th Cir.),
(continued. . .)

involved in the "competitive enterprise of the ferreting out of crime"[13] or that he "blindly" approved the search warrants.[14]

Lastly, the search warrants were not so facially deficient that no officer could reasonably presume them to be invalid.[15]  The warrants were sufficient because they described – with particularity – the places and things to be searched and the items to be seized so that Deputy Varilek and Sheriff Hamburger could reasonably assume the warrants were enforceable.[16]

## C.  Probable Cause, Hearsay Statements and Informant Reliability

First off, Westphal contends that there was not a substantial basis for determining the existence of probable cause because the search warrant affidavits were based on hearsay statements and on unreliable and uncorroborated information obtained from informants.  He insists that those informants – Forgey and Cooper – were

---

cert. denied, 135 S.Ct. 504 (2014); *United States v. Grant*, 490 F.3d 627, 633-34 (8th Cir. 2007), *cert. denied*, 552 U.S. 1281 (2008); *Chambers*, 987 F.2d at 1334-35.

[13]*See Johnson v. United States*, 333 U.S. 10, 14 (1948).

[14]*United States v. LaBatte*, CR. 12-30158-RAL, 2013 WL 2286340 at *6 (D.S.D. May 23, 2013); *United States v. Valandra*, CR. 11-30010-RAL, 2011 WL 3439919 at *4 (D.S.D. Aug. 5, 2011); *United States v. Medearis*, 775 F.Supp.2d 1110, 1122 (D.S.D. 2011).

[15]*See Long*, 797 F.3d at 568; *United States v. Houston*, 665 F.3d 991, 995 (8th Cir.), *cert. denied*, 566 U.S. 1004 (2012); *United States v. Carpenter*, 341 F.3d 666, 673 (8th Cir. 2003); *United States v. Smith*, 63 F.3d 766, 769 (8th Cir. 1995), *cert. denied*, 516 U.S. 1063 (1996).

[16]*See Long*, 30 F.Supp.3d at 861; *Valandra*, 2011 WL 3439919 at **8-9; *Medearis*, 775 F.Supp.2d at 1122.

not credible sources and could not be counted on to provide trustworthy information about him.

Probable cause exists when the search warrant affidavit sets forth sufficient facts to lead a prudent person to believe there is a "fair probability that contraband or evidence of a crime will be found in a particular place."[17]  The probable cause determination is made by assessing the "totality-of-the-circumstances" including the "'veracity' and 'basis of knowledge' of persons supplying hearsay information."[18]  A reviewing court "is simply to ensure that the [issuing judge] had a 'substantial basis for . . . conclude[ing]' that probable cause existed."[19]  Review of a warrant already issued should be "flexible" and not "hypertechnical," but the warrant affidavit must provide the issuing judge with a "substantial basis" to conclude that there is probable cause.[20]  If the existence of probable cause is a debatable one, then "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be

---

[17]*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[18]*Id*. at 238-39.

[19]*Id*. (*quoting Jones v. United States*, 362 U.S. 257, 271 (1960)).

[20]*See Gates*, 462 U.S. at 236, 239.

accorded to warrants."[21]  Once a judge finds probable cause to issue a warrant, that finding should be given "great deference."[22]

When an informant provides the information used to obtain a search warrant, the 'core question in assessing probable cause . . . is whether the information is reliable.'"[23]  "Even where an informant does not have a track record of supplying reliable evidence, the information may be considered reliable if it is corroborated by independent evidence."[24]

Hearsay evidence can serve as the basis for a warrant if there is some "substantial basis for crediting the hearsay."[25]  Probable cause can be found in hearsay statements from reliable persons, from confidential informants that are corroborated, or from observations made by law enforcement officials.[26]

---

[21]*United States v. Ventresca*, 380 U.S. 102, 109 (1965).

[22]*Gates*, 462 U.S. at 236.

[23]*United States Warford*, 439 F.3d 836, 841 (8th Cir. 2006) (*quoting United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

[24]*Warford*, 439 F.3d at 841.

[25]*Ventresca*, 380 U.S. at 107; *see also Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1258 (8th Cir. 2010) (although police officer did not speak to anyone who witnessed the incident, "probable-cause determinations generally may be based on hearsay"); *United States v. Smith*, 763 F.2d 329, 331 (8th Cir. 1985) (hearsay evidence is a permissible basis for finding probable cause to issue search warrant); Fed. R. Evid. 1101(d)(3) (the Rules of Evidence – except those on privilege – do not apply to issuing a search warrant).

[26]*See Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citations omitted).

Deputy Varilek's reliance on Forgey and Cooper's hearsay statements and information, and the inclusion of them in his search warrant affidavit, was objectively reasonable. Forgey told Deputy Tvedt that her children reported seeing a jar with a green substance inside and drug paraphernalia in Westphal's home. She also reported that Westphal had installed security cameras around the house and was sleeping with a pistol because he was paranoid that officers were surveying him. And she revealed that Westphal was now dating a woman Deputy Varilek knew to be a methamphetamine user.

Deputy Varilek met with and questioned Cooper who had just been to Westphal's house and seen him. Cooper confirmed that Westphal was monitoring the house with security cameras and she showed the deputy a photograph of a marijuana pipe and lighter one of the children had found in the residence. Cooper opined that Westphal was consuming methamphetamine and said that she and family members were in town to do an intervention because they were concerned about him. She described symptoms consistent with methamphetamine use, including hallucinations, weight loss, and sunken cheeks. And the information Cooper provided was recent and detailed.

Together, Forgey and Cooper's information, albeit in part hearsay, was arguably sufficient to support probable cause for a search warrant. Cooper's face-to-face disclosures and genuine concern for her brother gave greater weight to Deputy Varilek's decision to rely on her word. Deputy Varilek, and searching officers, had an

11

objectively legitimate basis for finding that Forgey and Cooper were credible citizen/family-member informants and in believing that there was probable cause to support the issuance of a search warrant for drugs and related contraband.[27]

## 2. Firearms

Ever vigilant, Westphal challenges the seizure of the rifles, shotguns, and pistol from his home. He asserts that there was no probable cause to associate the weapons with criminal activity or safety concerns to justify confiscating the guns.

The firearms though were all in plain view and could be properly taken. The seizure of an object falls within the plain-view exception to the warrant requirement if (1) officers did not violate the Fourth Amendment in arriving at the place from which the item could be plainly viewed; (2) the item's incriminating character is immediately apparent; and (3) officers have a lawful right of access to the item itself.[28] "[A]n item's incriminatory nature is immediately apparent if [ ] officer[s] had 'probable cause to associate the property with criminal activity' . . . meaning 'the facts available to [them]

---

[27]*See United States v. Stevens*, 530 F.3d 714, 718-19 (8th Cir.), *cert. denied*, 555 U.S. 1058 (2008); *Warford*, 439 F.3d at 841-42; *United States v. Solomon*, 432 F.3d 824, 827-29 (8th Cir. 2005); *United States v. LaMorie*, 100 F.3d 547, 553-54 (8th Cir. 1996); *see also United States v. Brown*, CR. 12-30115-RAL, 2013 WL 943619 at *7 (D.S.D. March 11, 2013) (discussing informant reliability in the context of *Leon*); *United States v. Valandra*, CR. 11-30010-RAL, 2011 WL 3439930 at *9 (D.S.D. June 9, 2011), *R & R adopted*, 2011 WL 3439919 (D.S.D. Aug. 5, 2011) (addressing informant reliability and the sufficiency of probable cause under *Leon*).

[28]*See Horton v. California*, 496 U.S. 128, 133-37 (1990); *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015).

would warrant [a person] of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime.'"[29]

At the moment officers seized the firearms, they had probable cause to believe Westphal was involved in criminal activity.  Based on what he knew and had been told, Deputy Varilek had good reason to suspect Westphal was in possession of a loaded firearm while intoxicated.[30]  The information Forgey and Cooper provided was enough for a reasonable officer in the deputy's position to conclude that Westphal had a disturbance of mental or physical capacities as a result of drug use (most likely methamphetamine).[31]  This evidence distinguishes Westphal's case from *United States v. Lewis*[32] and supports a plain-view seizure of the firearms.[33]

And unlike in *Lewis*, the officers here had a search warrant.  They accidentally came upon the firearms in the course of their search for drugs and related contraband.[34]  Given the number of people present, Westphal's irate and distraught behavior, and the

[29]*United States v. Craddock*, 841 F.3d 756, 759 (8th Cir. 2016) (*quoting Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality opinion)).

[30]*See* SDCL 22-14-7(3) (any person who has in his personal possession a loaded firearm while intoxicated is guilty of a Class 1 misdemeanor).

[31]*See* SDCL 22-1-2(21) (defining "intoxication").

[32]*See* 864 F.3d 937, 944 (8th Cir. 2017).

[33]*See United States v. Fitzgerald*, 724 F.2d 633, 636-37 (8th Cir. 1983) (*en banc*), *cert. denied*, 466 U.S. 950 (1984).

[34]*See United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir.), *cert. denied*, 444 U.S. 902 (1979).

reports from Forgey and Cooper, officers were justified in temporarily seizing the guns they found, for limited safety purposes, until they learned of Westphal's prior felony conviction.[35]

Regardless, in contrast to this case, the *Lewis* court had no cause to address, much less pass on, the admissibility of the gun under *Leon* because *Lewis* involved a warrantless search and seizure. When vetted through the strainer of *Leon* and its precepts, the warrant-based search of Westphal's property, and the seizure of the 10 guns found during the search, withstand the test of reasonableness.[36]

### 3. Sufficiency

Finally, Westphal attacks the propriety of the state judge's probable cause determination saying that the information presented to the judge was insufficient to authorize a search warrant for his home, garages, vehicles, and urine. The warrant should have never been issued in the first place, he declares, and a reasonable officer in Deputy Varilek's position, at the time, should have known this and not gone ahead with the execution of it.

---

[35]*See id.*; *see also United States v. Robinson*, 756 F.2d 56, 60 (8th Cir. 1985) (automatic pistol was properly seized during search for marijuana where search was conducted pursuant to a valid warrant and discovery of the pistol was inadvertent); *see and compare Lewis*, 864 F.3d at 944-47 (stating "[i]t does not necessarily follow that the *Malachesen* seizure standard applies when the police are not executing a search warrant" and observing that detectives did not suspect the defendant of any wrongdoing or that others present might have access to the holstered pistol on the shelf of a back room).

[36]*See Warford*, 439 F.3d at 842-43.

But the information provided to the judge was not so lacking in probative indicia to make Deputy Varilek's belief that probable cause existed completely unreasonable.[37] In determining whether the deputy's belief was objectively reasonable, the totality of the circumstances must be looked at "including any information known to the officer [ ], but not presented to the issuing judge."[38]

Keeping in mind that the *Leon* inquiry is "confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all of the[ ] circumstances,"[39] the Court is satisfied that the information Deputy Varilek communicated to the state judge provided sufficient indicia of probable cause to make the search of Westphal's property for evidence of illegal drug activity objectively reasonable.  The deputy had no reason to question the judge's probable cause determination or the efficacy of the information that went into this determination.[40]  That the affidavit contained hearsay statements and information from individuals whose credibility was not fully established does not mean that probable cause was wanting or that Deputy Varilek's conclusion that it existed was

---

[37]*See Leon*, 468 U.S. at 923.

[38]*United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (*quoting United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007)).

[39]*Leon*, 468 U.S. at 922, n. 23.

[40]*Id*. at 921; *see also United States v. Gibson*, 928 F.2d 250, 253-54 (8th Cir. 1991) ("[o]rdinarily, a police officer cannot be expected to question a judge's probable cause determination").

altogether unreasonable. The judge found probable cause to issue the warrant and the deputy had every right to rely on this finding and assume he and his fellow officers had the authority to conduct the requested search.

Deputy Varilek's reliance on the warrant – and the judge's probable cause determination – was in objective good faith. The information in the affidavit and the deputy's drug recognition know-how were ample enough to make any probable cause belief wholly reasonable.

*United States v. Loud,*[41] which Westphal cites, is inapposite. In that case, the court held that it was objectively unreasonable for an officer to present a search warrant affidavit to a judge when that affidavit was based on only uncorroborated information from anonymous callers.[42] Here, Cooper, Westphal's sibling, provided information the same day she had contact with and spoke to him. Forgey, Westphal's ex-wife/girlfriend, likewise provided first-hand information. Although it can be argued that Forgey had reason to lie or exaggerate, Cooper corroborated a good share of what Forgey reported through personal interactions with Westphal and a photograph of drug paraphernalia one of his children took while in the home. This case is a far cry from the situation in *Loud* where the search warrant affidavit relied solely on uncorroborated

---

[41]Criminal No. 17-293 ADM/LIB, 2018 WL 2095606 (D. Minn. May 7, 2018).

[42]*See* 2018 WL 2095606 at **1-3.

information provided by one or more anonymous callers.[43]  And *Loud* did not involve an officer – like Deputy Varilek – who was a certified drug recognition expert, interdictor, and narcotics detector dog handler.

## B. December 21, 2017 Search Warrant

Westphal also maintains that the search of his electronic devices violated the Fourth Amendment because the warrant issued for the search was invalid.  Once again, he complains about the sufficiency of the probable cause showing in the affidavit and the likelihood that evidence of a crime would be found on the devices.

Sheriff Hamburger's affidavit is essentially a condensed version of the affidavit Deputy Varilek submitted the day before.  Importantly, the sheriff's affidavit was submitted to the same judge who had earlier issued a search warrant for Westphal's residence, garages, vehicles and bodily fluids.[44]  The judge determined that this information was sufficient to support a search for drug evidence on Westphal's property and person.  It stands to reason that the same evidence would be adequate enough to uphold the search of mobile devices, found on the premises, for evidence of drug distribution and use.  Sheriff Hamburger set forth in his affidavit that he thought the devices constituted evidence of the commission of a criminal offense or were

---

[43]*See id.*

[44]*See United States v. Trejo*, 632 Fed. Appx. 877, 879-80 (8th Cir. 2015), *cert. denied*, 137 S.Ct. 413 (2016); *see also Valandra*, 2011 WL 3439919 at **2-3, 5-6, 8 (two search warrants, 18 days apart, issued by same judge – *Leon* applied).

intended for use in, or as a means of committing, such an offense. He described – though in a summary fashion – information he obtained during a face-to-face interview with Cooper and her belief that Westphal was using methamphetamine.

Beyond this, Sheriff Hamburger was privy to other evidence that he did not include in his affidavit. He was part of the team that searched Westphal's property the previous day and was aware of the wooden dugout and drug paraphernalia that officers seized in one of Westphal's garages. He also knew, before submitting the affidavit to the judge, that Westphal and Holzwarth tested presumptively positive for illegal drugs (marijuana and methamphetamine in the case of the former and marijuana for the latter). This and other information, although not included in Sheriff Hamburger's affidavit, is nonetheless a factor in the totality of the circumstances when assessing whether an officer relied in good faith on the validity of a warrant.[45] Based on these facts and others known to Sheriff Hamburger, and those in the warrant affidavit, it was reasonable for the sheriff to believe that there was probable cause to issue the warrant.[46]

In the end, even if his affidavit was too scanty in its probable cause showing, Sheriff Hamburger could reasonably rely on the validity of the warrant and search the electronic devices identified in it – given all that he and the state judge knew about

---

[45]*See United States v. Johnson*, 848 F.3d 872, 879 (8th Cir. 2017) (*citing Grant*, 490 F.3d at 632).

[46]*See Johnson*, 848 F.3d at 879.

Westphal, his drug use, secrecy, and protective measures.[47]   This being the case, whatever inculpatory data officers extracted from the devices may be used against Westphal at trial.

## C.  Tainted Fruit

Any evidence derived from the two searches likewise does not require suppression under the Exclusionary Rule.  Because officers did not sidestep the Fourth Amendment and were objectively reasonable in believing that the state warrants were valid, there is no "poisonous tree" for any "tainted fruit" to grow or fall from.  It follows then that the Government may use – in its case-in-chief at trial – the evidence officers acquired, and developed, from the searches and seizures of Westphal's property.

## CONCLUSION

The searches and seizures conducted at Westphal's home and of the electronic devices seized from it were based on objectively reasonable (good-faith) beliefs that the warrants, the same state judge found probable cause to issue, were valid.  Reasonable officers, in Deputy Varilek and Sheriff Hamburger's shoes, would not have known that the searches and seizures were illegal.  The warrants the judge issued were not so lacking in indicia of probable cause that officers could reasonably believe their searches were invalid.  Nor could officers reasonably be expected to question the judge's probable cause determinations.   And officers did not circumvent the Fourth

---

[47]*See id*.

Amendment or overstep their authority in seizing the firearms they found in several places on the premises.  Because officers acted within the bounds of the Constitution and did not subject themselves to the jaws of the Exclusionary Rule, Westphal cannot succeed on his suppression motion.

### RECOMMENDATION

For all of these reasons, and based on the authorities cited in this report, it is hereby

RECOMMENDED that Westphal's Motion to Suppress Evidence[48] be denied.

### NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[49] Unless an extension of time for cause is later obtained,[50] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[51]  Objections must "identify[] those issues on which further review is desired[.]"[52]

---

[48]*See* Dkt. No. 27.

[49]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[50]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[51]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[52]*Arn*, 474 U.S. at 155.

DATED this 12th day of March, 2019, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE